IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| STEPHEN J. CANTERBURY,<br>*Plaintiff,*<br><br>v.<br><br>J.P. MORGAN MORTGAGE ACQUISITION CORP.,<br>*Defendant.* | CIVIL ACTION NO. 3:10-cv-54<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

This matter is before the court upon consideration of J.P. Morgan Mortgage Acquisition Corp.'s ("J.P. Morgan" or "Defendant") motion to consolidate (docket no. 3) and motion to dismiss (docket no. 7). A hearing on the motions was held on December 6, 2010. For the reasons set forth below, the motion to consolidate will be denied and the motion to dismiss will be granted without prejudice in an accompanying order.

I.

On August 31, 2007, Stephen J. Canterbury ("Canterbury" or "Plaintiff") entered into a mortgage loan agreement with lender GMAC Mortgage, LLC, formerly GMAC Mortgage Corporation ("GMAC"). The $1,207,446 note was secured by a deed of trust to trustees Brandon Beswick and Karen Morris.

On February 13, 2009, J.P. Morgan, whose status as note holder is now in dispute, purported to appoint Equity Trustees, LLC ("Equity Trustees") as substitute trustee on the deed of trust. After Plaintiff fell into arrears on the note, J.P. Morgan directed Equity Trustees to schedule foreclosure on Plaintiff's Gordonsville, Virginia property pursuant to the deed of trust. Equity Trustees scheduled a sale for April 16, 2010, but cancelled after Plaintiff brought this suit.

1

A subsequent sale, scheduled for July 30, 2010, also was not consummated.

Plaintiff alleges that as of February 13, 2009, J.P. Morgan was not the holder of the note and therefore lacked the authority to appoint a substitute trustee. The note was endorsed in blank and bears no assignment date, and Equity Trustees did not respond to Plaintiff's request for verification of the date on which J.P. Morgan took possession of the note. Canterbury avers that there is "a pattern and practice in the mortgage loan industry for the entity purporting to appoint a substitute trustee to identify itself as holder of the note even though the note has been endorsed in blank and is in the possession of some other entity." Accordingly, he further alleges that Brandon Beswick and Karen Morris remain the trustees on the deed of trust, and that Equity Trustees had no authority to schedule foreclosure. He seeks a declaratory judgment that J.P. Morgan was not entitled to foreclose on the property, and is not entitled to add to the lien of the deed of trust any of the costs associated with scheduling the April and July 2010 foreclosure sales.

## II.

J.P. Morgan moves to dismiss, asserting that Plaintiff's claims are precluded by the doctrines of *res judicata*, waiver, and judicial estoppel. Defendant further challenges the sufficiency of Plaintiff's factual allegations.

## A.

Defendant's *res judicata*, waiver, and judicial estoppel claims are predicated on an earlier bankruptcy proceeding. On March 11, 2009, Plaintiff and his wife filed a voluntary petition under Chapter Seven of the Bankruptcy Code. The filing activated the automatic stay provision of 11 U.S.C. § 362, which prevents a pre-petition creditor from collecting debts, even when it has a security interest in the debtor's property. "In such a case, bankruptcy proceedings may

only delay the inevitable result. There may be no reason to make the creditor wait until the final distribution of the estate to get what it bargained for." *In the Matter of Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990). Under certain circumstances, the court must provide relief from the automatic stay. *See* 11 U.S.C. § 362(d). The court may lift the stay if there is good cause, such as if the creditor's interest is not adequately protected, or if the debtor has no equity in the collateral and the collateral is not necessary for effective reorganization. *Id. See also Vitreous Steel*, 911 F.2d at 1232.

On March 24, 2009, J.P. Morgan filed a lift stay motion in order to begin foreclosure pursuant to the deed of trust. The movant was listed as "J.P. Morgan Acquisition Corporation c/o EMC Mortgage Corporation." In his bankruptcy schedules, Plaintiff had named EMC Mortgage Corporation ("EMC") as the creditor for the debt represented by the note in question. However, EMC was not in fact the creditor, but the entity to which Canterbury made payments. J.P. Morgan states that EMC was its loan servicer.

In a pre-hearing order pursuant to the lift stay motion, the bankruptcy court ordered Plaintiff, his wife, and the bankruptcy trustee to file a responsive pleading. Among other things, the order required the parties to "indicate whether controversy exists as to the authenticity of any documents involved in the motion and . . . specify the disputed documents." It further stated that "[f]ailure to file a responsive pleading shall be deemed consent by the non-responding party to the relief requested by the Movant(s) and a waiver of any further notice or opportunity for hearing." As neither Plaintiff, his wife, nor the trustee filed a responsive pleading, the court entered a default order granting J.P. Morgan's motion.

Defendant submits that because J.P. Morgan filed the motion to lift stay "care of" EMC and Plaintiff had earlier identified EMC as the creditor with respect to the note, Plaintiff was on

notice that J.P. Morgan had claimed creditor status. Defendant further asserts that Plaintiff's failure to reply to the bankruptcy court's order precludes his challenge in the instant case.

1.

To prove *res judicata*, the Fourth Circuit requires that a party establish "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Pension Benefit Guar. Corp. v. Beverley*, 404 F.3d 243, 248 (4th Cir. 2005) (quotations omitted). In determining whether there is an identity of claims, the Fourth Circuit adopts the "transactional approach" of the Restatement (Second) of Judgments § 24(b). Under that approach, "the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1058 (4th Cir.1991) (quoting *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986)). The preclusive effect of *res judicata* applies not only to claims actually presented in the earlier action, but "all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Beverley*, 404 F.3d at 248 (quoting *Meekins*, 946 F.2d at 1057).

Courts are reluctant to find that a proceeding pursuant to Section 362 provides a basis for *res judicata*. A lift stay proceeding is a quick, summary affair. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir. 1994); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 31 (1st Cir. 1994). It does not "involve full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a *colorable claim* to property of the estate." *Grella*, 42 F.3d at 32 (emphasis added). Moreover, "[r]elief from the stay is obtained by a simple motion . . . and it is a 'contested matter,' rather than an

adversary proceeding" with verified pleadings.  *Id.* at 33 (quotations omitted).  The issues considered in a lift stay proceeding are "limited strictly to adequacy of protection, equity, and necessity to an effective reorganization."  *Vitreous Steel*, 911 F.2d at 1232.

Nonetheless, under extraordinary circumstances, a lift stay proceeding, coupled with other events, may provide the basis for *res judicata*.  *See County Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290 (4th Cir. 1987).  In *County Fuel*, the creditor sought a lift stay order so that it could foreclose on the debtor's accounts receivable, which served as security for a loan.  After obtaining the order, the creditor foreclosed and satisfied its claim in full.  In a later proceeding for attorney fees, the debtor acknowledged to the bankruptcy court that "[t]he secured claim for pre-petition secured debts incurred as receivable financing for working capital [is] not objected to and in fact [has] been paid in full."  *Id.* at 292.  Relying on that concession, the bankruptcy court awarded the creditor attorney fees, and the district court upheld the decision on appeal.

Subsequently, the debtor filed a breach of contract action alleging that the creditor had violated an oral agreement not to foreclose as long as the receivables provided adequate security for the outstanding debt.  For reasons similar to those identified in *Grella* and *Vitreous Steel*, the Fourth Circuit opined that it was "doubtful" that under a strict application of *res judicata*, the bankruptcy proceeding should bar the debtor's contract claim.  *Id.*  Nonetheless, relying on "principles of waiver closely related to those that, in the interests of repose and integrity, underlie *res judicata*" the court ruled against the debtor.  *Id.* at 293.

As in *County Fuel*, Defendant's motion in the instant case cannot be granted on the basis of a strict application of *res judicata* doctrine.  Plaintiff's failure to file a responsive pleading in the lift stay proceedings was at most an admission that J.P. Morgan had a colorable claim to the Gordonsville property.  *See Grella*, 42 F.3d at 32.  *Res judicata* does not apply because "the

5

merits of claims [were] not in issue." *County Fuel*, 832 F.2d at 293. Accordingly, the first prong of the *res judicata* test has not been satisfied. *See Beverley*, 404 F.3d at 248.

Furthermore, the case for adopting a waiver approach is weaker here than in *County Fuel*. There, the court relied on a host of factors:

> [W]e are satisfied that County Fuel's failure to object or to assert its claim as a counterclaim to Equitable's claim in the bankruptcy proceeding, followed by Equitable's satisfaction of the principal amount of its claim upon lifting of the automatic stay, followed by County Fuel's express concession of the validity of Equitable's principal claim in the course of objecting to its further claim for attorney fees, suffices to preclude County Fuel's later independent actions.

832 F.2d at 293. A contrary holding would have "constitute[d] a successful collateral attack" on the bankruptcy court's attorney fees decision, as well as the district court's decision on appeal. *Id.* It would have required the creditor to make restitution of the amount it had realized in foreclosure. *Id.* None of those factors are present here. Moreover, Plaintiff never affirmatively named J.P. Morgan as creditor, but merely declined to contest a motion filed by J.P. Morgan "care of" EMC. Therefore, Defendant's motion will not be granted on the basis of a waiver theory.

2.

The purpose of judicial estoppel "is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). As judicial estoppel is an equitable doctrine, the court may invoke it at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "[T]hat doctrine typically applies when, among other things, a party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Reel Elsevier, Inc. v. Muchnick*, --- U.S. ---, 130 S.Ct. 1237, 1249 (2010) (quotation omitted).

6

As it is an equitable doctrine, judicial estoppel "cannot be reduced to a precise formula or test." *Zedner v. United States*, 547 U.S. 489, 504 (2006). Nonetheless, in deciding whether to apply judicial estoppel, courts typically consider the same factors:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (quoting *New Hampshire*, 532 U.S. at 749); *See also Lowery*, 92 F.3d at 224; *PBM Nutritionals*, *LLC v. Dornoch Ltd.*, 667 F. Supp. 2d 621, 629 (E.D. Va. 2009). To say that a court accepts the party's earlier position "means only that the first court has adopted the position urged by the party . . . as part of a final disposition." *Lowery*, 92 F.3d at 224 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n. 5 (6th Cir. 1982)). Courts also focus on whether the inconsistency was intentional, or due to "inadvertence or mistake." *New Hampshire*, 532 U.S. at 753 (quoting *John S. Clark Co. v. Faggert & Frieden P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). Indeed, in the Fourth Circuit, "[t]his bad faith requirement is the determinative factor." *Whitten v. Fred's, Inc.*, 601 F.3d 231, 241 (4th Cir. 2010) (citations omitted).

As discussed in part one, above, a lift stay proceeding does not involve a full adjudication on the merits, but rather establishes that a creditor has a colorable claim to the property of the estate. *Grella*, 42 F.3d at 32. Thus, the bankruptcy court did not rely on Plaintiff's implied admission of J.P. Morgan's note holder status as part of a "final disposition." Moreover, Canterbury did not "persuade" or "urge" the bankruptcy court to accept his position. He merely impliedly acquiesced to the stance J.P. Morgan had adopted. Furthermore, I see no evidence that Canterbury acted in bad faith to mislead the courts.

Finally, the summary and preliminary nature of a lift stay proceeding in bankruptcy is significant. As the bankruptcy court's decision is only preliminary, J.P. Morgan's reliance interest in the outcome of that proceeding is diminished. Also, the case law contemplates that debtors will bring defenses and counterclaims against creditors after an automatic stay has been lifted. *See Grella*, 42 F.3d at 32; *Estate Construction Co.*, 14 F.3d at 219; *Vitreous Steel*, 911 F.2d at 1232. Courts have never suggested that such adjudications would call into question the integrity of the judicial process. Nor does it appear that allowing the Plaintiff to proceed on his theory would damage the integrity of the bankruptcy court's determination. Therefore, judicial estoppel does not apply.

**B.**

J.P. Morgan also challenges the sufficiency of Plaintiff's factual allegations. The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the legal sufficiency of a complaint, rather than the facts alleged in support of it . . . ." *Hall v. Virginia*, 385 F.3d 421, 427 (4th Cir. 2004). Therefore, in considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *see also Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). However, legal conclusions in the guise of factual allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1950-51 (2009).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] If the alleged facts are "'merely consistent with' a defendant's liability, [the claim] 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950.

As a preliminary matter, Canterbury submits that the allegation that he never received a cure notice pursuant to the deed of trust should survive dismissal, because J.P. Morgan has not challenged that allegation. *See* Am. Compl. ¶ 9. However, upon review of the pleadings it is clear that this assertion is dependent upon Plaintiff's central claim, that J.P. Morgan was not the note holder at all relevant times. The amended complaint concedes that counsel for Equity Trustees sent Plaintiff "a letter which was a proper cure notice in compliance with . . . the deed of trust." Am. Compl. ¶ 18. Therefore, whether Plaintiff received the proper notice depends on whether J.P. Morgan had the authority to name Equity Trustees as substitute trustee. As J.P. Morgan's motion to dismiss challenges the sufficiency of that central claim, there is no need to address the notice issue separately.

J.P. Morgan identifies infirmities related to the key allegations of Plaintiff's amended complaint:

---

[1] In evaluating a motion to dismiss, the court may consider documents extrinsic to the complaint if they are "integral to and explicitly relied on in the complaint*." See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009) (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). *See also Davis v. George Mason Univ.*, 395 F.Supp.2d 331, 335 (E.D.Va. 2005). Defendant asks that the court consider a promissory note, deed of trust, and deed of appointment of substitute trustee. As there is no objection, and Plaintiff attached these documents as exhibits to his original complaint, the court will consider these documents in evaluating Defendant's motion.

> 12. On information and belief, Canterbury avers that on February 13, 2009, J.P. Morgan was not the holder of the note and therefore did not have authority to appoint a substitute trustee on the deed of trust.
>
> 13. Attached to the original complaint marked "Exhibit C" is a copy of the note, showing it was endorsed in blank. The endorsement does not indicate when it was signed or who was the assignee of the note.
>
> 14. There is a pattern and practice in the mortgage loan industry for the entity purporting to appoint a substitute trustee to identify itself as holder of the note even though the note has been endorsed in blank and is in the possession of some other entity.

Am. Compl. ¶¶ 12-14. Plaintiff submits that these allegations must also be read in light of Equity Trustees' failure to reply to counsel's request for verification of the date J.P. Morgan took possession of the note. *See* Am. Compl. ¶ 15.

Because Plaintiff's central claim that J.P. Morgan was not the note holder is conclusory, it is not entitled to deference under *Iqbal* and *Twombly*. *See Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F.Supp.2d 610, 619 (E.D. Va. 2009) (dismissing defamation claim made on information and belief under *Iqbal* and *Twombly*); *Brown v. Herron*, 2009 WL 2366131, at *4 (D. Md. 2009). Thus, the court will not presume the truth of that contention unless the remaining factual allegations "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 447.

As Defendant suggests, Canterbury's assertion of a widespread, deceptive pattern and practice in the mortgage loan industry is also conclusory and not entitled to deference. Even if accepted as true, the allegation would have little bearing on whether J.P. Morgan engaged in the practice in this case. Furthermore, that the note was endorsed in blank does not save Plaintiff's claim. The Virginia Code explicitly provides for blank endorsements. *See* Va. Code § 8.3A-205(b) ("When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed."). While blank endorsement

10

is consistent with Plaintiff's position, it does not lend it plausibility.  Moreover, that Equity Trustees' failed to verify J.P. Morgan's possession is similarly unhelpful.  As there are myriad reasons Equity Trustees may not have replied to counsel's inquiry, it would be conjecture to suggest that the failure had anything to do with J.P. Morgan's status as note holder.  Therefore, Plaintiff's factual allegations do not elevate his claim "above the speculative level." *Twombly*, 550 U.S. at 555.

Accordingly, Plaintiff's claim will be dismissed without prejudice.

### III.

Federal Rule of Civil Procedure 42(a) permits the court to consolidate two actions if they "involve a common question of law or fact."  Also pending before this court is Plaintiff's federal Truth in Lending Act claim against Defendant and GMAC, which is not a party to the instant case.  *See* Civil Action No. 3:10-cv-48.  Defendant has moved to consolidate the cases (docket no. 3).  Although the cases involve common questions of fact, I see no compelling reason for formal consolidation.  Although I will deny Defendant's motion, the court will work with the parties to try this case and No. 3:10-cv-48 simultaneously.

### IV.

For the reasons given herein, Defendant's motion to consolidate will be denied, and Defendant's motion to dismiss will be granted without prejudice in an appropriate order accompanying this opinion.

The Clerk of the Court is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ___20th___ day of December, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE